**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 07-282-DLB**

**JEFFREY CLARK**                                                                                          **PLAINTIFF**

vs.                                        **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                          **DEFENDANT**

* * * * * * * * * * * * * * *

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jeffrey Clark was 39 years old at the time of filing his application for Supplemental Security Income (SSI) payments on December 10, 2001. (Tr. 68-70).  He alleges a disability onset date of June 1, 1997,[1] due to pain in his hips, back, and lower legs, resulting in inability to stand for long periods of time or lift heavy objects. (Tr. 101).

Plaintiff's claim was denied initially on February 6, 2002 (tr. 52-55), and denied again on March 21, 2002, after reconsideration (tr. 58-60).  At Plaintiff's request, an administrative

---

[1] As noted by ALJ Letchworth, since under 20 C.F.R. § 416.335, SSI is not payable prior to the month following the month in which the application is filed, Plaintiff's disability status was assessed as of his December 10, 2001, filing date, although his complete medical history was considered by the ALJ in making that assessment.  (Tr. 10).

hearing was held before ALJ Joan Lawrence (tr. 219-36), following which Plaintiff was denied payments in a written decision of April 28, 2004 (tr. 162-69). However, that decision was vacated by the Appeals Council, with the matter remanded for further proceedings. (Tr. 175-78). After Plaintiff failed to appear for a subsequent hearing, ALJ Lawrence dismissed his claim. (Tr. 209-12). Upon civil filing challenging the dismissal, the Commissioner moved to enter judgment and remand the matter (tr. 241-43), which the Court granted by an August 9, 2006, Order and Judgment remanding (tr. 244-45). A new hearing was held on March 22, 2007, in Middlesboro, Kentucky. (Tr. 266-98). By written decision of May 7, 2007, ALJ Frank Letchworth ruled that Plaintiff was not under a disability and so was not eligible for SSI payments. (Tr. 10-19).

The instant action was filed on August 13, 2007. It has now culminated in cross motions for summary judgment.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even

if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, or combination thereof, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since filing his application. (Tr. 12). At Steps 2 and 3, the ALJ found that Plaintiff has severe impairments of hip pain and borderline intellectual functioning (BIF). (Tr. 12). The ALJ concluded, however, that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment found in Appendix 1 to Subpart P of Regulations No. 4. (Tr. 14-16).

At Step 4, the ALJ found that Plaintiff had the physical residual functional capacity (RFC) to perform a significant range of work at the light exertion level, being able to lift and carry twenty pounds occasionally and ten pounds frequently, and requires a sit/stand option. Nonexertionally, he is precluded from employments requiring him to read, and

limited to an object focused work environment with no more than casual contact with others and no more than occasional changes in the workplace. (Tr. 16-17).

Because Plaintiff's past work as an auto body helper and retail stocker entail exertional requirements beyond those of his RFC, the ALJ concluded that he could not return to any of his past relevant work. (Tr. 18). ALJ Letchworth therefore proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there are jobs existing in significant numbers in the national economy at or below the light exertion level that Plaintiff could perform consistent with his RFC, including that of assembler, inspector, and machine tender. (Tr. 19). This conclusion resulted from testimony by a vocational expert (VE), in response to hypothetical questions involving a person of Plaintiff's age, education, past relevant work experience, and RFC. (Tr. 296-97). The ALJ therefore found that Plaintiff has not been under a Social Security disability since his December 10, 2001, application filing date. (Tr. 19).

**C.    Analysis**

Plaintiff raises tandem arguments on appeal. He submits that the ALJ's hypothetical questions given to the VE did not accurately portray his impairments and therefore cannot serve as substantial evidence in support of the ALJ's findings. Plaintiff submits that the ALJ's RFC is flawed and consequently that the hypothetical based thereon is infirm. More particularly, Plaintiff takes issue with the ALJ's failure to expressly include in his RFC certain opinions of state consulting psychologist Kenneth Starkey. (Tr. 195-99).

To constitute reliable vocational evidence, hypothetical questions posed by an ALJ to a VE must include those limitations that accurately portray a claimant's physical and/or mental impairments. *Webb v. Comm'r of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004);

4

*Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). In this case, the ALJ determined that Plaintiff retained the RFC to perform light level work with a sit/stand option but which does not require reading and is "limited to an object focused work environment with no more than casual contact with others and no more than occasional changes in the workplace." (Tr. 16). The ALJ noted this determination as being based upon the diagnosis of state agency psychological examiners Drs. Maryman and Starkey that Plaintiff is of borderline intellectual functioning, and their opinions about his occupational limitations arising therefrom, which the ALJ found to be consistent with the record as a whole. (Tr. 17).

Psychologist Gary Maryman consultatively examined Plaintiff on October 1, 2003. (Tr. 148-53). In conjunction therewith, he also completed a Medical Assessment of Ability to do Work-Related Activities (Mental). (Tr. 154-55). Based on his clinical evaluation, he opined that Plaintiff has a "fair" (limited but satisfactory) ability to follow work rules, relate to co-workers, use judgment, interact with supervisors, function independently, and maintain attention/concentration (tr. 154), but that Plaintiff has only a "fair" to "poor" (seriously limited but not precluded) ability to deal with work stresses and only a "poor" ability to deal with the public (*id.*). Maryman explained these latter two opinions by noting that Mr. Clark displayed very good focus and concentration during the examination, but that his interactions with the general public and stress tolerance are limited primarily by his sub-average intelligence. Maryman remarked that, due to Plaintiff's BIF, he is unable to handle complex job instructions, has a poor ability to process detailed but not complex instructions, and a fair ability to understand, remember and carry out simple job instructions. (Tr. 155). Lastly, he opined that Mr. Clark has a fair ability to maintain personal appearance, behave

in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (*Id.*).

Psychologist Kenneth Starkey performed an updated mental evaluation on December 16, 2004. (Tr. 188-96).  He, too, completed a Medical Assessment of Ability to do Work-Related Activities (Mental) form. (Tr. 197-98).  His limitations he assessed are virtually identical to those noted assessed by Psychologist Markman noted above, with one exception.  Starkey found Plaintiff to have a poor ability to "demonstrate reliability." (Tr. 198).

Plaintiff places great significance upon this differing opinion, emphasizing that when his counsel presented this difference to the VE at hearing, she testified that this additional limitation upon the hypothetical situation presented by the ALJ would render such a person unable to maintain competitive employment in those occupations articulated by her without such restriction. (Tr. 297).  Apparently Plaintiff is of the belief that in order to be valid, the ALJ's RFC must repeat verbatim this reliability area noted by Psychologist Starkey as being "poor."  Such is not the case, for at least two reasons.  One, residual functional capacity is determined by the ALJ, not dictated by medical sources.  20 C.F.R. § 416.946; *Clinker v. Apfel,* 2000 WL 1234325 (6th Cir.)(rejecting argument that ALJ erred by "creating" his own RFC and noting the relevant question is "whether the ALJ's assessment was supported by substantial evidence").  It reflects the most a claimant can do given his impairments.  Its determination is within the exclusive province of the ALJ.

And two, Plaintiff's contention is belied by the additional comments by Starkey on the mental assessment form in the section pertaining to Plaintiff's reliability.  Starkey unequivocally states on his assessment that Mr. Clark's "prevailing prob[lems] are likely

6

associated with [his history] of <u>active</u> cannabis dependence prob[lem] and would be alleviated with effective treatment of this prob[lem] and abstinence from cannabis." (Tr. 198). Indeed, the record is replete with references to Plaintiff's cannabis use. (*See, e.g.,* tr. 96, pain questionnaire indicating occasional marijuana usage for past 15 years; tr. 150, history given to Maryman of smoking one joint per evening; tr. 191, history given to Starkey of having smoked five joints per day from 1981 to 1991 and then smoking two to three joints of marijuana per day at the time of Starkey's December, 2004 exam).

The ALJ's questioning adequately depicted the limitations and functional capacity as determined by him and, therefore, provides proper vocational testimony upon which the ALJ could rely in determining disability. Since the RFC reflected the ALJ's conclusions about Plaintiff's overall mental and physical functional capabilities, appropriately formulated based upon the medical and other evidence of record, nothing further was required. The ALJ acted within his authority and discretion in determining how to interpret a restriction of "poor" reliability qualified by reference to its causal association to Plaintiff's cannabis use and likely alleviation with abstinence therefrom. Plaintiff's argument ignores that which is plainly noted on the medical assessment form – that Plaintiff's activity level is to be determined *without* consideration given to his drug use. (Tr. 197). Therefore, it was reasonable for the ALJ, in accepting the opinions of Starkey, to disregard this specific limitation because of its qualification.

The ALJ is permitted to and should review and interpret the medical evidence, including Psychologist Starkey's conclusions and opinions. Yet a judge's findings are not required to mirror them. Substantial evidence is not lacking because an RFC fails to parrot each medical source remark, as long as the RFC is consistent overall with the opinions

7

expressed by the doctor(s).  The ALJ's RFC and questioning of the VE as to Plaintiff's non-physical limitations are consistent with the *relevant* opinions of Psychologists Maryman and Starkey, which is all that is required.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED**.

A Judgment affirming this matter will be entered contemporaneously herewith.

Dated this 22nd day of September, 2008.



Signed By:
Davis L. Bunning   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\6-07-282-ClarkMOO.wpd